UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13cv0107 TCM |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying John Evans' application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-433. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

### Procedural History

Plaintiff John Evans filed his application for disability insurance benefits (DIB) on June 3, 2010, alleging that he had become disabled on May 11, 2010, because of epilepsy, asthma, depression, fear of leaving the house, inability to socially interact, and confusion/disorientation related to epilepsy. (Tr. 98-104, 120.) On July 10, 2010, the Social Security Administration denied Plaintiff's claim for benefits. (Tr. 42, 43, 44-47.) Upon Plaintiff's request, a hearing was held before an administrative law judge (ALJ) on August 10, 2011, at which Plaintiff and a vocational expert testified. (Tr. 20-34.) On

October 25, 2011, the ALJ issued a decision denying Plaintiff's claim for benefits, finding Plaintiff able to perform his past relevant work as a fast food assistant manager and fast food cashier. (Tr. 5-19.) On November 13, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-4.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In the instant action for judicial review, Plaintiff contends that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Plaintiff argues that the ALJ erred by failing to find his mental impairment to be severe. Plaintiff further argues that the ALJ erred in failing to consider the effects of his mental impairment in determining his residual functional capacity (RFC). Finally, Plaintiff contends that the ALJ erred in discounting the opinions and observations of his treating psychiatrist, Dr. Liss. Plaintiff requests that the final decision be reversed and that he be awarded benefits, or that the matter be remanded for further consideration.

1Because the ALJ committed no legal error and substantial evidence on the record as a whole supports the ALJ's decision, the Commissioner's final decision that Plaintiff was not disabled is affirmed.[1]

**Relevant Testimonial Evidence Before the ALJ**

At the hearing on August 10, 2011, Plaintiff testified in response to questions posed by the ALJ and counsel.

---

[1] The undersigned has reviewed the entirety of the administrative record in determining whether the Commissioner's adverse decision is supported by substantial evidence. Inasmuch as Plaintiff challenges the decision only as it relates to his mental impairment and not as it relates to any physical impairment, the recitation of specific evidence in this Memorandum and Order is limited to only that evidence relating to the issues raised by Plaintiff in this action.

At the time of the hearing, Plaintiff was twenty-six years of age. Plaintiff graduated from high school. (Tr. 22.) Plaintiff lives alone in an apartment near his parents. (Tr. 30.)

Plaintiff's Work History Report shows that Plaintiff worked as a pizza delivery driver from August 2003 to June 2004. From July 2004 to January 2005, Plaintiff worked as a vendor at a home improvement store. From February 2005 to March 2006, Plaintiff worked as salesman for a newspaper distributor. From June 2006 to December 2008, Plaintiff worked as a laborer for a fence company. (Tr. 128.) Plaintiff testified that he also worked at a fast food restaurant as a cashier from 2001 to 2003, where he also worked as an assistant manager from March 2008 to October 2009. (Tr. 22-23, 128.) Plaintiff testified that he was terminated from this last job because he was unable to consistently show up for his work shifts. Plaintiff testified that he has not sought other employment. (Tr. 22-24.)

Plaintiff testified that he is being treated for depression and that his psychotherapist, Dr. Gergeceff, advised him that he was unable to work in his current condition. Plaintiff testified that he visits Dr. Gergeceff every two or three months after which Dr. Gergeceff consults with Plaintiff's psychiatrist, Dr. Liss, for medication therapy. Plaintiff testified that Dr. Liss recently changed his medication from an anti-depressant to a mood stabilizer because the anti-depressant caused him to have severe mood swings whereby he would experience happiness and then aggressiveness and anger. Plaintiff testified that he was currently taking Xanax for severe anxiety, which helps his condition, but that the medication causes drowsiness and fatigue. Plaintiff testified that

he also experiences crying spells. (Tr. 27, 29-30.)

Plaintiff testified that he has had numerous seizures since 2006, with his last seizure having occurred in May 2010. (Tr. 24.)

As to his daily activities, Plaintiff testified that he takes his medication, feeds his fish, and performs chores. Plaintiff testified that he takes naps because his medication causes drowsiness. Plaintiff testified that his hobbies include writing and painting. Plaintiff testified that he drinks socially. (Tr. 24, 28-29.)

At the conclusion of the hearing, the ALJ determined to hold the matter open for an additional thirty days to provide counsel the opportunity to retrieve records from Plaintiff's psychotherapist, whom counsel was unaware had provided treatment to Plaintiff. (Tr. 31, 34.)

## Relevant Medical Evidence Before the ALJ

Plaintiff visited Dr. John J. O'Keefe, a neurologist, in September 2008 and September 2009 for follow up of his seizure condition. It was noted during these visits that Plaintiff had not had a seizure since January 2006. Plaintiff reported no complaints during these visits. Mental status examinations were normal, with Dr. O'Keefe specifically noting Plaintiff to be alert and oriented to person, place, and time; and to have normal memory, concentration, attention span, auditory comprehension, fund of knowledge, affect, and judgment. (Tr. 157-59, 160-62.)

Plaintiff followed up with Dr. O'Keefe on July 1, 2010, in relation to a seizure experienced on May 11, 2010. Plaintiff reported no new complaints. Review of systems showed Plaintiff not to complain of any psychiatric symptoms, including anxious feelings

and depression. Mental status examination showed Plaintiff to be alert and oriented to person, place, and time; and to have normal memory, concentration, attention span, auditory comprehension, fund of knowledge, affect, and judgment. (Tr. 192-94.)

Plaintiff visited Dr. Jay Liss, a psychiatrist, on December 1, 2010, and complained of having many fears, depression, and anxiety. In a checklist format, Dr. Liss noted Plaintiff to exhibit anxiety, phobias, obsessions, depression, distractibility, and disorganization. It was noted that Plaintiff saw a counselor a few years prior. (Tr. 205.)

Plaintiff returned to Dr. Liss on January 19, 2011, and reported that he was a little better with Xanax. Attention deficit disorder (ADD) and seasonal affective disorder were discussed. Dr. Liss diagnosed Plaintiff with anxiety and ADD, and Xanax and Adderall were prescribed. (Tr. 204.)

Plaintiff visited Dr. Liss on March 23, 2011, and reported that he was appealing the denial of his application for disability benefits. Obsessive compulsive disorder (OCD) and ADD were discussed. Dr. Liss diagnosed Plaintiff with OCD and ADD and assigned a Global Assessment of Functioning (GAF) score of 50.[2] Plaintiff was instructed to continue with Xanax, and Sertraline was prescribed. (Tr. 203.)

On June 29, 2011, Plaintiff visited Dr. Liss and reported that he could not sleep and experienced cold sweats. Plaintiff reported having racing thoughts and that he experienced aura relating to his epilepsy. Plaintiff's disability appeal was noted. Dr. Liss

---

[2] A GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness." *Diagnostic and Statistical Manual of Mental Disorders*, Text Revision 34 (4th ed. 2000). A GAF score of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).

diagnosed Plaintiff with depression and assigned a GAF score of 50. Plaintiff was instructed to continue with Xanax and to discontinue Zoloft. Lamictal and Temazepam were prescribed. (Tr. 202.)

On August 22, 2011, Dr. Liss completed a Mental Medical Assessment of Ability To Do Work-Related Activities in which he identified Plaintiff's diagnoses to be anxiety, depression, and attention deficit hyperactivity disorder (ADHD). Dr. Liss opined that Plaintiff was disabled. Dr. Liss reported that Plaintiff's highest GAF score within the past year was 40/45.[3] From a prepared list setting out thirty-two separate signs and symptoms of mental disorders, Dr. Liss checked that Plaintiff exhibited twenty-seven of such signs and symptoms, including poor memory, sleep disturbance, personality change, mood disturbance, recurrent panic attacks, suicidal ideation or attempts, perceptual disturbance, time or place disorientation, illogical thinking or loosening of associations, persistent irrational fears, and pathological dependence. Dr. Liss reported Plaintiff to have had a fair and stable response to treatment but that his prognosis was fair or poor because of his chronic seizures, panic, anxiety, and depression. Dr. Liss reported that Plaintiff experienced limitations because of frequent auras, disorientation, poor cognitive skills, agoraphobia since seventeen years of age, epileptic seizures, and poor concentration. Dr. Liss opined that Plaintiff had poor or no ability to understand, remember, and carry out "complete" jobs instructions; and fair ability to understand, remember, and carry out

---

[3] A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.,* speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.*, depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

simple and/or detailed, but not complex, job instructions. Dr. Liss opined that Plaintiff's epilepsy caused mental confusion resulting in Plaintiff having poor or no ability to demonstrate reliability; and fair ability to maintain personal appearance, behave in an emotionally stable manner, and relate predictably in social situations. Dr. Liss opined that Plaintiff's severe impairment, cognitive deficiencies, and interruptions caused by seizures resulted in Plaintiff's inability to hold attention such that he could not work a full time job on a sustained basis. Dr. Liss opined that Plaintiff would be absent from work more than three times a month because of his impairment or treatment therefor. Dr. Liss opined that Plaintiff had marked restrictions of daily living; extreme difficulties in maintaining social functioning; constant difficulties in maintaining concentration, persistence, or pace; and experienced frequent episodes of decompensation of extended duration. (Tr. 213-16.)

In an accompanying Mental RFC form, Dr. Liss reported that Plaintiff's treatment consists of medication and therapy and that such treatment maintained Plaintiff's stability and prevented him from being institutionalized. Dr. Liss opined that Plaintiff's disabling impairment has lasted or was expected to last one year and that his prognosis was poor. Dr. Liss reported that Plaintiff's impairment prevented him from standing and/or sitting upright for six to eight hours because of fatigue, restlessness, and poor concentration. Dr. Liss reported that Plaintiff's impairment required him to lie down during the day because of fatigue and avoidance. Dr. Liss reported that Plaintiff's impairment prevented him from lifting, pulling, and holding objects because of his fear of seizures. Dr. Liss opined that Plaintiff's seizure condition would prevent Plaintiff from travelling alone. Dr. Liss

opined that Plaintiff's disability was not likely to change. (Tr. 217-22.)

## The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act and would continue to meet them through March 31, 2014. The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 11, 2010, the alleged onset date of disability. The ALJ found Plaintiff's history of seizures, asthma, and obesity to be severe impairments, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ found Plaintiff not to have a severe mental impairment. The ALJ determined that Plaintiff had the RFC to perform light work, except no climbing ropes, ladders, or scaffolds; only occasional climbing stairs and ramps; only occasional balancing, stooping, kneeling, crouching, and crawling; must avoid concentrated exposure to fumes, odors, dust, and gasses; and must avoid moderate exposure to the hazards of unprotected heights and moving and dangerous machinery. The ALJ found Plaintiff's RFC not to preclude the performance of Plaintiff's past relevant work as a fast food assistant manager and fast food cashier. The ALJ thus found Plaintiff able to perform such past relevant work and therefore not to be under a disability. (Tr. 8-16.)

## Discussion

To be eligible for DIB under the Social Security Act, Plaintiff must prove that he is disabled. **Pearsall v. Massanari**, 274 F.3d 1211, 1217 (8th Cir. 2001); **Baker v. Secretary of Health & Human Servs.**, 955 F.2d 552, 555 (8th Cir. 1992). The Social

Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 404.1520; **Bowen v. Yuckert**, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled

to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); **Richardson v. Perales**, 402 U.S. 389, 401 (1971); **Estes v. Barnhart**, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. **Johnson v. Apfel**, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." **Coleman v. Astrue**, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." **Id.** (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The Plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the Plaintiff's impairments.

6. The testimony of vocational experts when required

> which is based upon a proper hypothetical question
> which sets forth the claimant's impairment.

**Stewart v. Secretary of Health & Human Servs.**, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence that fairly detracts from the Commissioner's decision. **Coleman**, 498 F.3d at 770; **Warburton v. Apfel**, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. **Pearsall**, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." **Weikert v. Sullivan**, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); accord **Jones ex rel. Morris v. Barnhart**, 315 F.3d 974, 977 (8th Cir. 2003).

Plaintiff claims here that the ALJ erred in the manner and method by which he determined Plaintiff's mental impairment not to be severe; and further, that the ALJ erred in failing to consider the effects of his mental impairment in the RFC assessment.

At Step 2 of the evaluation process, the ALJ specifically determined Plaintiff's mental impairment not to be severe. (Tr. 10-12.) In making this determination, the ALJ properly invoked 20 C.F.R. § 404.1520a(c)(3), which requires an ALJ to determine the severity of a mental impairment by rating the degree of functional loss the impairment causes a claimant to suffer in the areas of daily living; social functioning; concentration,

persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

> When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. . . .
>
> . . .
>
> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe . . . .

20 C.F.R. § 404.1520a(c)(4)-(d)(1).

Here, the ALJ summarized the evidence of record and, after undergoing the required analysis set out above, found Plaintiff's mental impairment to result in only mild limitations in Plaintiff's daily activities; social functioning; and maintaining concentration, persistence and pace; and to have resulted in no repeated episodes of decompensation. The ALJ thus concluded that Plaintiff's mental impairment was not severe. (Tr. 11-12.) For the following reasons, substantial evidence on the record as a whole supports this determination.

A review of the record in its entirety shows Plaintiff to have engaged in substantial gainful activity through, at least, October 2009; and Plaintiff does not allege a disability until May 11, 2010. During this time, Plaintiff was being treated for a seizure condition – identified by Plaintiff as epilepsy – for which Plaintiff underwent periodic examinations by his treating neurologist, Dr. O'Keefe. During these examinations, Dr. O'Keefe

conducted mental status evaluations that specifically addressed matters such as concentration, attention, memory, and orientation, with such evaluations consistently yielding normal results. In July 2010, Dr. O'Keefe conducted another neurological examination as a result of Plaintiff's May 2010 seizure. The detailed mental status evaluation conducted during this examination again yielded normal results. Additional psychological factors were considered during this examination, however, and Dr. O'Keefe noted Plaintiff not to report any symptoms relating to anxiety or depression.

Plaintiff first saw Dr. Liss in December 2010. As noted by the ALJ, Dr. Liss made no detailed findings of severe symptoms in any of his treatment notes during Plaintiff's visits with him. Also, as noted by the ALJ, Dr. Liss's diagnoses of Plaintiff changed from visit to visit, ranging between depression, anxiety, OCD, ADD, and ADHD. In March and June 2011, Dr. Liss assigned GAF scores of 50, indicating serious symptoms. In his August 2011 Mental Medical Assessment, Dr. Liss opined that Plaintiff was disabled and that his mental impairment caused limitations so significant and extreme that Plaintiff was virtually unable to perform any work-related functions. Dr. Liss attributed many of such limitations to Plaintiff's poor concentration, memory, and cognitive abilities related to Plaintiff's seizure condition. Dr. Liss also noted that Plaintiff suffered from debilitating psychiatric phobias since seventeen years of age. Finally, Dr. Liss reported that Plaintiff's highest GAF score attained during the previous year was 40/45.

While the ALJ acknowledged Plaintiff's treatment by Dr. Liss, including his varying diagnoses, GAF scores, and prescribed medications, the ALJ properly determined to accord little or no weight to Dr. Liss's opinion rendered in his August 2011

Assessment.

First, the ALJ found Dr. Liss's opinion on the ultimate legal issue of disability to be an issue reserved to the Commissioner and not a medical opinion entitled to deference. The ALJ did not err in this determination. **Ellis v. Barnhart**, 392 F.3d 988, 994-95 (8th Cir. 2005). In addition, the ALJ noted Dr. Liss's opinion not to be supported by his own treatment notes. While Dr. Liss opined in August 2011 that Plaintiff suffered limitations so extreme that he was rendered virtually unable to engage in any work-related activity, Dr. Liss's treatment notes wholly fail to document such extreme limitations or debilitating symptoms. An ALJ is permitted to discount a treating physician's medical source statement "where the limitations listed on the form 'stand alone' and were 'never mentioned in [the physician's] numerous records of treatment' nor supported by 'any objective testing or reasoning.'" **Reed v. Barnhart**, 399 F.3d 917, 921 (8th Cir. 2005) (quoting Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001)). See also **Teague v. Astrue**, 638 F.3d 611, 615 (8th Cir. 2011) (little evidentiary weight accorded to functional limitations set out in MSS check-off form because previous treatment notes did not report any significant limitations); **Halverson v. Astrue**, 600 F.3d 922, 930 (8th Cir. 2010) (inconsistency between treating physician's treatment records and his functional assessment provides good reason for ALJ to discount physician's opinion). The ALJ further noted Plaintiff's self-reported activities of making his bed, taking out the trash, and feeding his fish; shopping for clothing, contact lenses, and medical supplies; reading, watching television, and chatting online; and self-reported abilities to follow written and spoken instructions, spend time with others, and get along with authority figures (Tr. 11-

12, 135-42), and determined that evidence of such activities was inconsistent with a finding that Plaintiff experienced more than slight restrictions in functioning and thus with Dr. Liss's restrictive GAF scores indicating serious symptoms (Tr. 14). Where GAF ratings do not appear to reflect a claimant's actual abilities as demonstrated by the evidence, an ALJ does not err in according less weight to the opinions giving rise to such ratings. See **Hudson ex rel. Jones v. Barnhart**, 345 F.3d 661, 666-67 (8th Cir. 2003). To the extent the ALJ erroneously stated that Dr. Liss saw Plaintiff only every three to six months – finding this to be "hardly the frequency to be expected if there was a severe psychological condition" (Tr. 15)[4] – and noted that Dr. Liss changed his diagnosis from visit to visit, rendering suspect any opinion that Plaintiff suffered from a diagnosed condition for at least twelve months,[5] such statements do not lessen the ALJ's other well-supported reasons to discredit Dr. Liss's August 2011 opinion. An arguable deficiency in opinion-writing technique does not require an ALJ's finding to be set aside when the deficiency has no bearing on the outcome. **Hepp v. Astrue**, 511 F.3d 798, 806 (8th Cir. 2008).

Plaintiff argues that Dr. Liss's opinion regarding the effects of Plaintiff's mental impairment should be accorded significant weight inasmuch as Dr. Liss is a psychiatrist.

---

[4] As noted by Plaintiff, Dr. Liss himself misstated the frequency of Plaintiff's visits as "3-6 mos." (Tr. 214.)

[5] *See* 20 C.F.R. § 404.1522 (consideration given to durational requirement when claimant has unrelated severe impairments or concurrent impairments). But see **Hilkemeyer v. Barnhart**, 380 F.3d 441, 445-46 (8th Cir. 2004) (ALJ did not err in rejecting inconsistent diagnoses of mental disorders).

While 20 C.F.R. § 404.1527(d)(5) [6] encourages the Commissioner to give greater weight to the opinion of a specialist than to the opinion of a general physician, this rule does not apply where the specialist's opinion is controverted by substantial evidence or is otherwise discredited. **Prosch v. Apfel**, 201 F.3d 1010, 1014 (8th Cir. 2000). As discussed *supra,* the ALJ properly discredited Dr. Liss's August 2011 opinion for numerous well-supported reasons. As such, he was not required to give it special deference under § 404.1527(d)(5). This is especially true here where a significant portion of Dr. Liss's opinion rested on the belief that many of Plaintiff's disabling symptoms resulted from his seizure condition. The record contains no evidence, however, that the treating neurologist charged with monitoring and managing Plaintiff's seizure condition observed any such symptoms. Indeed, the contrary is true. See <u>**Brosnahan v. Barnhart**</u>, 336 F.3d 671, 676 (8th Cir. 2003) (no error in discounting opinion of psychologist where it is based partly on consideration of physical impairments).

While the Regulations require that more weight be given to the opinions of treating physicians than other sources, and a treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, 20 C.F.R. § 404.1527(d)(2) ; **Forehand v. Barnhart**, 364 F.3d 984, 986 (8th Cir. 2004), a review of

---

[6] Citations to 20 C.F.R. § 404.1527 are to the 2011 version of the Regulations, which were in effect at the time the ALJ rendered the final decision in this cause. This Regulation's most recent amendment, effective March 26, 2012, reorganizes the subparagraphs relevant to this discussion but does not otherwise change the substance therein.

the ALJ's decision shows the ALJ to have considered the relevant factors under § 404.1527(d) and (e) and to have provided good reasons for according little or no weight to Dr. Liss's opinion. Because such reasons are supported by substantial evidence on the record as a whole, the ALJ's determination as to what weight to accord Dr. Liss's opinion must be upheld.

The ALJ thoroughly summarized the remaining evidence of record relating to Plaintiff's daily activities; social interactions; and concentration, persistence, and pace and found Plaintiff to suffer only mild limitations in such areas. Because substantial evidence on the record as a whole supports these findings, the ALJ's determination that Plaintiff's mental impairment did not rise to the level of a severe impairment must be affirmed. See, e.g., **Buckner v. Astrue**, 646 F.3d 549, 557 (8th Cir. 2011) (ALJ's finding that claimant's mental impairment was not severe was supported by evidence of several normal psychological evaluations, visits to practitioner with no complaints of depression, and symptoms attributed to physical impairment); **Kirby v. Astrue**, 500 F.3d 705, 709 (8th Cir. 2007) (ALJ's finding that claimant's mental impairment was not severe was supported by medical evidence that Plaintiff exhibited normal judgment, recall, comprehension, behavior, and calculation); **Weikert**, 977 F.2d at 1253 (mental impairment not severe upon consideration of Plaintiff's hobbies, chores, shopping, maintaining residence, and maintaining friendships with no evidence of serious dysfunction in social relationships); **Jones v. Callahan**, 122 F.3d 1148 (8th Cir. 1997).

Plaintiff contends however, that even if his mental impairment was properly found not to be severe because of only mild limitations in all areas of functioning, the ALJ

nevertheless was required to include these mild limitations in the RFC determination. In the circumstances of this case, the ALJ was not required to include such limitations and therefore did not err in his failure to do so.

When assessing a claimant's RFC, an ALJ is required to consider all medically determinable impairments, including non-severe impairments. *See* 20 C.F.R. § 404.1545. As noted *supra*, the ALJ here discussed the effects of Plaintiff's mental impairment when he evaluated its severity. As such, it cannot be said that the ALJ did not consider the effects of such impairment when he assessed Plaintiff's RFC. With such consideration and the ALJ's lack of inclusion of mental limitations in the RFC, it is reasonable to conclude that the ALJ implicitly found such limitations not to impose significant restrictions on Plaintiff's ability to perform gainful employment. See **McCoy v. Astrue**, 648 F.3d 605, 615 (8th Cir. 2011) (by identifying and considering evidence relating to impairment and then not including alleged limitations caused thereby in detailed RFC, conclusion can be made that ALJ implicitly found no significant limitations); **Buckner**, 646 F.3d at 561; **Hilkemeyer**, 380 F.3d at 447; **Jackson v. Apfel**, 162 F.3d 533, 538 (8th Cir. 1998). Although the ALJ did not explicitly "list and reject" the possibility that Plaintiff's non-severe mental impairment affected his RFC, such a task is not required. See **McCoy**, 648 F.3d at 615.

## Conclusion

For the reasons set out above, the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence on the record as a whole. Inasmuch as substantial evidence on the record as a whole supports the Commissioner's decision, this

Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court might have reached a different conclusion. **Gowell v. Apfel**, 242 F.3d 793, 796 (8th Cir. 2001); accord **Buckner**, 646 F.3d at 556. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed and this action is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

        /s/ Thomas C. Mummert, III
        THOMAS C. MUMMERT, III
        UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of December, 2013.